UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| JOHN WORTHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0081 (ABJ) |
| | ) | |
| OFFICE OF NATIONAL | ) | |
| DRUG CONTROL POLICY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

*Pro se* plaintiff John Worthington filed this action against the Office of National Drug Control Policy, the U.S. Department of Justice ("DOJ"), the Bureau of Justice Assistance Programs, the Department of the Treasury, and three officials within the federal government: Attorney General William P. Barr; a Grants Management Specialist at DOJ, Jeffrey Felten-Green; and former Treasurer of the United States, Jovita Carranza. Am. Compl. [Dkt. # 5]. Plaintiff alleges that defendants conspired with a "multi-jurisdictional drug task force" called the West Sound Narcotics Enforcement Team ("WestNET") to deprive plaintiff of his property through seizure of his marijuana plants. *See id.* ¶¶ 1.6–1.8.

Plaintiff has brought thirteen claims alleging violations of: the Washington Criminal Profiteering Act, RCW 9A.82.060, 9A.82.080; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 *et seq.*; federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343; the Fourth, Fifth, Tenth, Thirteenth, and Fourteenth Amendments of the U.S. Constitution; federal civil rights and anti-commandeering statutes, 42 U.S.C. § 1983 and 34 U.S.C. § 10228; the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*, and the Washington

Administrative Procedure Act, RCW 34.05.570 *et seq*.  Am. Compl. ¶¶ 1.1–1.2.  Plaintiff also seeks injunctive, declaratory, and mandamus relief pursuant to federal and Washington state mandamus statutes.  28 U.S.C. § 1361; 28 U.S.C. § 2201 *et seq.*; RCW 7.16 *et seq*.

On June 26, 2019, defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Defs.' Mot. to Dismiss [Dkt. # 15] ("Defs.' Mot."); Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 15-1] ("Defs.' Mem.") at 4–6.  Plaintiff opposed the motion on July 7, 2019, Pl.'s Mem. in Opp. to Defs.' Mot. [Dkt. # 18], but then amended that opposition on July 9, 2019.  Pl.'s Am. Mem. in Opp. to Defs.' Mot. [Dkt. # 20] ("Pl.'s Opp.").  In support of his opposition, plaintiff has filed two motions to take judicial notice.  Mot. to Take Judicial Notice [Dkt. # 24]; Second Mot. to Take Judicial Notice [Dkt. # 26].  On August 5, 2019, defendants replied to plaintiff's opposition, Defs.' Reply in Supp. of Defs.' Mot. [Dkt. # 22], and on August 6, plaintiff filed a sur-reply.  Pl.'s Sur-Reply to Defs.' Mot. [Dkt. # 23].

For the reasons stated below, defendants' motion to dismiss will be granted as to all counts.  In light of the Court's ruling, plaintiff's motions to take judicial notice will be denied as moot.

## BACKGROUND

On January 7, 2007, plaintiff John Worthington was subject to a raid on his home in Washington state, Am. Compl. ¶ 5.21, conducted by WestNET, *id*. ¶ 1.13, which is comprised of various Washington State police and sheriffs' offices.[1]  Plaintiff alleges that WestNET was operating under the command and control of two federal organizations:  the Office of National Drug Control Policy ("ONDCP") and the Drug Enforcement Agency ("DEA").  *Id*. ¶¶ 1.8, 5.21.

---

1   Plaintiff alleges that WestNET consists of "the Naval Criminal Investigative Services, Washington State Patrol, Kitsap County Sheriff's Office, Mason County Sheriff's Office, Pierce County Sherriff's Office, Port Orchard Police, Poulsbo Police, Shelton Police and other municipalities off and on over the years."  Am. Compl. at 6, n.1.

During the raid, WestNET agents seized marijuana plants belonging to plaintiff that he claims were for medicinal use. *Id*. ¶ 5.26. The plants were then allegedly turned over to the DEA to be "summarily destroyed." *Id*. Plaintiff asserts that the raid was performed as part of a federal policy "to have cross designated state and local law enforcement to seize medical marijuana for the DEA and have it 'summarily' destroyed, without seizure and forfeiture process . . . ." *Id*.

Plaintiff also alleges that WestNET was an "unlawful entity" when it conducted the 2007 raid on his home. *See* Am. Compl. ¶¶ 6.2–6.3 (alleging that Washington state and local members of WestNET "had no authority to create a legal entity named WestNET" but nevertheless "created court documents that portrayed WestNET as a legal entity to which forfeitures could be unlawfully made to and to which fines, [f]ees, restitution, and court costs could be unlawfully collected for and distributed"); *id*. ¶ 6.3 ("The WestNET Policy Board then used the illegally collected WestNET money as its own private piggy bank and started hiring its own employees and spending the monies collected using the alleged illegal entity WestNET. Non-WestNET members identified herein participated and managed the monies obtained in the conspiracy."). While WestNET is not a defendant in this case, plaintiff claims that federal agencies violated both federal and Washington state law when they used WestNET to perform the seizure and conditioned funding to WestNET on certain actions. *Id*. ¶¶ 6.7, 6.10, 6.11.

Plaintiff has filed two prior lawsuits regarding the legal status of WestNET and the raid on his home. One case was filed in the United States District Court for the Western District of Washington regarding the 2007 raid on his home and was dismissed because plaintiff did "not request actual damages nor [did] he show a 'real and immediate' threat of future constitutional injury." *Worthington v. Wash. State Attorney Gen.'s Office*, No. C10-0118JLR, 2010 WL 1576717, at *2, *4 (W.D. Wash. Apr. 20, 2010). The second suit concerned whether the joint drug

3

task force wrongfully denied a records request.[2] *Worthington v. WestNET*, 341 P.3d 995 (Wash. 2015). Additionally, prior to bringing this action, Worthington filed a "nearly inscrutable" petition to perpetuate testimony in another court in this district, which was *sua sponte* dismissed because he failed to satisfy Federal Rule of Civil Procedure 27(a) which governs the circumstances under which a petition to perpetuate testimony can be brought. *See* Order, *In re Pet. by Worthington*, No. 18-mc-0053, ECF No. 3 (D.D.C. May 15, 2018).

Plaintiff filed this action on January 10, 2019. Compl. [Dkt. #1]. Plaintiff then amended his complaint on March 4, 2019. *See* Am. Compl.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts

---

[2] The trial court ultimately dismissed the case because the interlocal agreement establishing the task force specified that it was not an entity subject to suit. *Worthington*, 341 P.3d at 998. An appeals court affirmed, *id.*, but the Washington Supreme Court ultimately reversed, holding that the trial court should not have relied solely on the interlocal agreement but should instead have considered whether the task force operates as the "functional equivalent" of an agency subject to the records act as established by the state's public-records case law. *Id.* at 1001. On remand, the trial court concluded that WestNET was not the functional equivalent of an agency subject to the public-records law because it did not maintain a separate office or separate records, and that any request for records related to the task force could be obtained from the Kitsap County Sheriff's Office. *Worthington v. WestNET*, No. 48590-7-II, 2017 WL 4150589, at *3–*5 (Wash. App. Sept. 19, 2017), *review denied*, 420 P.3d 705 (Wash. 2018).

4

alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

I.  **Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held

"to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Kowal*, 16 F.3d at 1276; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Plaintiff's amended complaint includes thirteen counts:

- Count 1 – violations of Washington Criminal Profiteering Act ("WCPA"), RCW 9A.82.060, through leading organized crime;

- Count 2 – violations of the WCPA, RCW 9A.82.080, through use of proceeds of criminal profiteering;

- Count 3 – violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a), (b), through acquisition and maintenance of an interest in and control of an enterprise engaged in a pattern of racketeering activity;

- Count 4 – violations of RICO, § 1962(c), through conduct and participation in a RICO enterprise through a pattern of racketeering activity;

- Count 5 – violations of RICO, § 1962(d), through conspiracy to engage in a pattern of racketeering activity;

- Count 6 – violations of mail and wire fraud, 18 U.S.C. §§ 1341, 1343;

- Count 7 – claims for compensatory tort damages for violation of the Fourth, Fifth, and Fourteenth Amendments;

- Count 8 – Due Process as applied challenge for violations of the Fourth, Fifth, and Fourteenth Amendments and 42 U.S.C. § 1983;

7

- Count 9 – Due Process facial challenge for violations of the Fourth, Fifth, Thirteenth, and Fourteenth Amendments and 42 U.S.C. § 1983;

- Count 10 – violations of the Administrative Procedure Act ("APA"), 5 U.S.C § 706(1), through violation of the statutory requirement to file notice of intent to seize property;

- Count 11 – violations of the APA, § 706(2)(a), through a policy to use state and local law enforcement to allow the DEA to destroy medical marijuana;

- Count 12 – violation of the Tenth Amendment's prohibition on federal agencies commandeering state law enforcement through a DEA policy to use state and local law enforcement to destroy medical marijuana;

- Count 13 – Demand for declaratory and mandamus relief.

Am. Compl. ¶¶ 6.1–6.46.

Defendants argue that plaintiff does not state RICO or fraud claims (Counts 1–6) and they are barred by the doctrine of sovereign immunity; that the constitutional and APA claims (Counts 7–12) are barred by the statute of limitations; that plaintiff lacks standing for declaratory or injunctive relief (Count 13); and that he fails to state a claim for any constitutional or statutory violations. Defs.' Mem. at 6–14.

**I.   Counts 1–6 are Barred by Sovereign Immunity.**

Counts 1–6 of plaintiff's amended complaint allege violations under the RICO Act, the Washington Criminal Profiteering Act ("WCPA"), and federal mail and wire fraud statutes. Am. Compl. ¶¶ 6.1–6.19. In Count 1 and 2, plaintiff alleges that the state criminal statute was violated when "[t]he O.N.D.C.P., U.S.D.O.J., WestNET Prosecutors, WestNET members, Kitsap County Prosecutors office, Mason County Prosecutors office and Pierce County Prosecutors office along with the WestNET Policy Board, led an organized crime ring using the unlawful entity WestNET to collect monies and properties," *id.* ¶ 6.2, and where federal agencies "collected and either sent

or had illegal monies sent to the WestNET."[3]  *Id.* ¶ 6.3.  Counts 3–5 allege violations §§ 1962(a)-(d) of the federal RICO statute, based upon the same set of facts as those alleged in Counts 1–2, alleging predicate crimes of wire and mail fraud.  *Id.* ¶¶ 6.9–6.17; 7.32–7.33.  Finally, plaintiff bases Count 6 on alleged violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.  *Id.* ¶¶ 6.18–6.19.  He states, "[a]t various times and places most defendants knowingly did conspire to use the U.S. [m]ail or [w]ire from 2000 to 2018 for the purpose of executing, or attempting to execute, the scheme (of using the unlawful entity WestNET to obtain cash, property, fines, fees, and restitution)."  *Id.* ¶ 6.19.

Defendants contend that these claims are barred because the United States has not waived its sovereign immunity.  Defs.' Mem. at 11.  Under the doctrine of sovereign immunity, the United States is immune from suit unless Congress has expressly waived the defense of sovereign immunity by statute.  *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("[A] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied."); *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  This immunity extends to federal agencies, including the ONDCP, the DOJ, the Bureau of Justice Assistance Programs, and DOT.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").  Sovereign immunity also applies to a federal official sued in his official capacity.[4]  *Jackson*

---

3   None of the prosecutors' offices named in Counts 1 and 2 are defendants in this action.

4   The three federal officials named as defendants in this lawsuit were named in their official capacity.  *See* Am. Compl.

*v. Donovan*, 844 F. Supp. 2d 74, 76 (D.D.C. 2012), *citing Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985).

Plaintiff bears the burden of establishing that sovereign immunity has been waived. *Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003). Here, plaintiff has not cited any authority that waives the government's immunity to the counts. Plaintiff argues that "the federal government agencies waived sovereign immunity when they agreed to sign the TNET and WestNET interlocal agreement . . . ," Pl.'s Opp. at 5–6, but the interlocal agreement, attached to plaintiff's opposition, does not include a waiver of sovereign immunity. *See* Ex. 3 to Pl.'s Opp. [Dkt. # 18-4] ("Interlocal Agreement"). Indeed, no federal agency is even a party to the interlocal agreement. *Id.* at 1 (stating that the agreement is "between the Counties of Kitsap and Mason and the Cities of Bainbridge Island, Bremerton, Port Orchard, Poulsbo, Shelton, Gig Harbor and the Washington State Patrol and Naval Criminal Investigative Service").

Furthermore, the statutes under which plaintiff brings his claims – the WCPA, RICO, and the mail and wire fraud statutes – contain no waiver of sovereign immunity. *See Norris v. U.S. Dep't of Defense*, No. 96–5326, 1997 WL 362495, at *1 (D.C. Cir. May 5, 1997) ("Appellant's claims for treble damages under the Racketeer Influenced and Corrupt Organizations Act against [United States agencies and officials] are barred by the doctrine of sovereign immunity"). The federal fraud statutes are criminal provisions, and they do not have provisions authorizing private civil actions, much less provisions authorizing suit against the government. *See Ellis v. CapitalSource Bank FBO Aeon Fin., LLC*, 924 F. Supp. 2d 282, 286 (D.D.C. 2013) (holding no private right of action exists for mail fraud), *citing Hunter v. District of Columbia*, 384 F. Supp. 2d 257, 260 n.1 (D.D.C. 2005); *Pitts v. Comm'r of Internal Revenue*, No. 05 Civ. 1313, 2005 WL

1278528, at *4 (S.D.N.Y. May 10, 2005) ("[E]ven if [a private right to mail fraud] existed, the United States has not waived its sovereign immunity to permit such a suit against it . . . .").

Since Congress has not explicitly waived sovereign immunity for plaintiff's claims, the Court lacks jurisdiction to hear Counts 1–6, and they will be dismissed.

## II. Counts 7–12 are Barred by the Statute of Limitations.

Plaintiff brings multiple constitutional claims, which are at times overlapping and difficult to understand. In Count 7, he demands compensatory damages for violations of the Fourth, Fifth, and Fourteenth[5] Amendments due to an alleged failure to provide a "post-seizure hearing" after his property was confiscated. Am. Compl. ¶ 6.21. Plaintiff states, "[a]t various times and places [d]efendants withheld the true seizing agency in the 2007 raid by failing to file a property seizure report triggering the administrative process and identifying the seizing agency." *Id*. In Counts 8 and 9, plaintiff brings a "Due Process As Applied Challenge" and a "Due Process Facial Challenge," again referencing the Fourth, Fifth, Tenth, Thirteenth, and Fourteenth Amendments.[6]

---

5     As defendants point out, the due process protections of the Fourteenth Amendment apply only to states, not the federal government. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1955) ("[T]he Fourteenth Amendment . . . applies only to the states."). Thus, plaintiffs' invocation of this amendment is misplaced.

6     Count 9 alleges the same facts and violations as Count 8, but asserts a claim of vicarious liability, presumably because employees of the defendants allegedly contributed to the constitutional deprivations. *Id.* ¶ 6.31.

11

In these counts, he also alleges violations of 42 U.S.C. § 1983 and 34 U.S.C. § 10228.[7] *Id.* ¶¶ 6.22–6.33. In describing these counts, plaintiff states that "[i]n 1996–1997, the O.N.D.C.P. and U.S.D.O.J. conspired to use cross designated state and local law enforcement, under the command and control of the DEA, through a series of federal grant contracts and associated agreements, to seize medical marijuana, and then turn it over to the DEA to be 'summarily' destroyed, before any seizure process could be initiated or even completed." *Id.* ¶ 6.23. He alleges that this "conspiracy to circumvent state medical marijuana laws by creating a private federally controlled state and local law enforcement mechanism" led to the deprivation of his ability to "challenge seizure or forfeiture of his property." *Id.* ¶ 6.26. Plaintiff's final constitutional claim, Count 12, invokes the

---

[7] Section 10228 is entitled "Prohibition of Federal control over State and local criminal justice agencies; prohibition of discrimination" and the section cited by plaintiff states that "[n]othing in this chapter or any other Act shall be construed to authorize any department, agency, officer, or employee of the United States to exercise any discretion, supervision, or control over any police force or any other criminal justice agency of any State or any political subdivision thereof." 34 U.S.C. § 10228(a). As the Fourth Circuit has observed in construing section 10228's predecessor statute, the provision is intended "to guard against any tendency towards federalization of local police and law enforcement agencies." *Ely v. Velde*, 451 F.2d 1130, 1136 (4th Cir. 1971). Plaintiff contends that the federal government, through the DOJ, unlawfully commandeered Washington state's law enforcement apparatus by "'conditioning' [] federal funds unless the state and local contractors follow the federal drug control policy embodied in the grants and federal cross designation . . . ." Am. Compl. ¶ 6.42. Plaintiff also maintains that defendants signed an "interlocal agreement" under which defendants exercised direction, control, and supervision over the state agency. Am. Compl. ¶¶ 1.24, 5.5, 5.30. But, as the Court noted earlier, federal agencies are not parties to the interlocal agreement. *See* Interlocal Agreement.

Tenth Amendment,[8] and it alleges the federal government, through the DOJ, unlawfully commandeered the state of Washington through the "'conditioning' of federal funds unless the state and local contractors follow the federal drug control policy embodied in the grants and federal cross designation . . . ." *Id.* ¶¶ 6.38–6.42.

Plaintiff also brings claims under the Administrative Procedure Act and the Washington Administrative Procedure Act in Counts 10 and 11. Am. Compl. ¶¶ 6.24–6.42. In Count 10, plaintiff alleges that the failure to provide notice violated the state and federal acts. Specifically, he claims that the government's failure to comply with 18 U.S.C. § 983(a)(1)(A)(i) which requires it to send written notice to interested parties in a civil forfeiture proceeding, make the agency's action unlawful under the APA. *Id.* ¶ 6.35. In Count 11, plaintiff alleges that the government violated the APA and WAPA when ONDCP and DOJ promulgated a policy to destroy medical marijuana. Am. Compl. ¶¶ 6.35, 6.37.

---

8  The Tenth Amendment states: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. The Supreme Court has held that the Tenth Amendment encompasses an "anti-commandeering doctrine," which means that "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *New York v. United States*, 505 U.S. 144, 161 (1992) (alteration in original), quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 287 (1981). Furthermore, "federal action [that] would 'commandeer' state governments into the service of federal regulatory purposes . . . would . . . be inconsistent with the Constitution's division of authority between federal and state governments." *Id.* at 175. In *Printz v. United States*, the Supreme Court held that Tenth Amendment prohibits the federal government from issuing "directives requiring the States to address particular problems, []or command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." 521 U.S. 898, 935 (1997). From what the Court can glean from plaintiff's complaint, his Tenth Amendment claim is premised on an allegation that defendants have allegedly "cross designated state and local law enforcement to seize medical marijuana for the DEA and have it 'summarily' destroyed." Am. Compl. ¶ 5.26.

As a threshold matter, defendants correctly contend that the claims brought under the Washington Administrative Procedure Act must be dismissed because the Act does not apply to federal agencies. Defs.' Mem. at 11, n.7. The Washington Administrative Procedure Act applies only to Washington State agencies, RCW 34.05.010(2), and it permits review only in Washington State courts. RCW 34.05.514. Thus, this Court is without jurisdiction to review violations of the WAPA.

Defendants argue that the rest of plaintiff's claims are barred by the statute of limitations. Defs.' Mem. at 8. Under 28 U.S.C. § 2401(a), the United States is protected by a six-year statute of limitations for claims brought against it. *Hardin v. Jackson*, 625 F.3d 739, 742 (D.C. Cir. 2010) ("Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."), quoting § 2401(a). This statute of limitations applies to claims brought under the APA, *see Harris v. F.A.A.*, 353 F.3d 1006, 1009 (D.C. Cir. 2004) ("Unless another statute prescribes otherwise, a suit challenging final agency action pursuant to section 704 must be commenced within six years after the right of action first accrues."), and to claims alleging constitutional violations. *Neighbors of Casino San Pablo v. Salazar*, 442 Fed. Appx. 579, 580 (D.C. Cir. 2011) (applying section 2401(a) to constitutional claims); *see also Impro Prods., Inc. v. Block*, 722 F.2d 845, 851 n. 12 (D.C. Cir. 1983) ("[I]f plaintiffs indeed assert a colorable constitutional claim, the District Court must determine whether it satisfies the six-year statute of limitations for civil actions against the United States.")

Claims under the APA are considered to have accrued on the date of the "final agency action" that is the subject of the claims. *See Impro Products*, 722 F.2d at 850–51 (holding that under the APA, "where no formal review procedures existed, the cause of action accrued when the

14

agency action occurred"). Constitutional claims accrue "when the injured party discovers – or in the exercise of due diligence should have discovered – that it has been injured." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996).

Here, the complained-of "final agency action" occurred on January 7, 2007, when the raid on plaintiff's home took place and the property was seized. So, plaintiff had until January 7, 2013 to bring Counts 10 and 11. This case was filed on January 10, 2019, *see* Compl., six years and three days too late.

Plaintiff argues that actionable final agency action does not occur "until a legal entity comes forth to comply with state or federal seizure forfeiture laws," Pl.'s Opp. at 3–5, and that the statute of limitations does not begin to run until he "gets official notice from a seizing agency" in accordance with 18 U.S.C. § 983(A)(1)(a)(vi). *Id.* at 11. But circuit precedent holds that the cause of action accrues when the agency takes the action that gives rise to a claim, or when the party discovers the injury, not when compliance with a statute is supposed to take place. As defendants state, "it would be particularly odd to toll the statute of limitations until [d]efendants comply with what [plaintiff] believes to be a violation of statutory seizure requirements, as that is one of the bases for his claims. If limitations periods could be tolled until alleged statutory violations were remedied, then they would seemingly never come into play." Defs.' Mem. at 9.

The constitutional claims fare no better. "Under the discovery rule, a cause of action accrues when the injured party discovers – or in the exercise of due diligence should have discovered – that it has been injured." *Hardin*, 625 F.3d at 743 (D.C. Cir. 2010), quoting *Nat'l Treasury Emps. Union v. FLRA*, 392 F.3d 498, 501 (D.C. Cir. 2004). Plaintiff knew of the federal government's "involvement" in the alleged illegal seizure as early as January 7, 2010, when he filed suit in the U.S. District Court for the Western District of Washington. *See Worthington v.*

15

*Washington State Attorney Gen.'s Office*, No. C10-0118JLR, 2010 WL 1576717, at *1 (W.D. Wash. Apr. 20, 2010). In that case, he claimed violations of Washington state law and the U.S. Constitution when his home was raided in 2007 and state agents stated that they would allow him to keep his plants, but federal DEA agents confiscated them and destroyed them. *Id.* This indicates that plaintiff was aware that he had been injured and that he could bring a claim against the federal government as early as January 7, 2010, if not earlier.

In response to these realities, plaintiff contends that he is entitled to equitable tolling of the statute of limitations.[9] Pl.'s Opp. at 12–15. He argues that the statute of limitations should be tolled until May 3, 2018, when he says he "finally determined that WestNET could not legally exist despite its 17[-]year history of legally existing." Am. Compl. ¶ 5.35. But that does not establish an entitlement to equitable tolling. To toll the statute of limitations, plaintiff "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020), quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). This remedy is "rare" and plaintiff must overcome a "high threshold" to apply it. *Id.*, citing *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) ("The court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances.").

---

9    Defendants argued in their motion to dismiss that the statute of limitations in 28 U.S.C. 2401(a) is jurisdictional, and thus it is not subject to equitable tolling. Defs.' Mem. at 8, citing *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987). Defendants recognized that the continuing viability of *Spannaus* in light of the Supreme Court's decision in *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015) (finding the statute of limitations in § 2401(b) was not jurisdictional), was questionable. Defs.' Mem. at 8 n.5. Defendants filed a notice of supplemental authority on February 25, 2020, pointing the Court to *Jackson v. Modley*, 949 F.3d 763 (D.C. Cir. 2020), in which the D.C. Circuit held that the time bar is not jurisdictional, and as such, it is subject to equitable tolling. Notice of Suppl. Auth. [Dkt. # 29].

Here, plaintiff has not established that he meets the high threshold to apply equitable tolling. While plaintiff's pleadings, prior administrative filings, and previous filings in both state and federal courts indicate that he has pursued his rights diligently in some circumstances, he has not pointed to any facts that would suggest that his ability to bring his claims was impaired in any way. Even if there was some reason that plaintiff was unable to appreciate that "WestNET could not legally exist" until May 3, 2018, *see* Pl.'s Opp. at 12, his claims in this lawsuit are against federal government agencies and not the Washington state entities that make up WestNET. It is not clear at all what the status of WestNET has to do with plaintiff's claims that the government failed to provide him with notice its of seizure of his marijuana plants, or that the DEA improperly destroyed them, or plaintiff's claims involving fraud and racketeering. Since plaintiff has failed to identify any extraordinary circumstance that stood in his way, the Court finds that the statute of limitations has elapsed. Counts 7–12 are untimely, and therefore, they will be dismissed.

**III. The Court will Dismiss Count 13 Because Plaintiff has not Pleaded that he is Entitled to Declaratory, Injunctive, or Mandamus Relief.**

In Count 13 of the amended complaint, plaintiff demands "declaratory and mandamus relief" under both federal and Washington law "compelling state and federal actors to abide by the 4th, 5th, 10th and 14th amendment[s], and stop violating the Washington State and federal [RICO] [A]ct provisions." Am. Compl. ¶¶ 6.43–6.46; 7.46. Plaintiff also states in Count 13 that he is entitled to an "injunction preventing the O.N.D.C.P. and U.S.D.O.J. policies from applying that condition and federal policy."[10] *Id.* ¶ 6.46. Upon review of the entire amended complaint,

---

10 The Court is not clear to what specific "condition" and "federal policy" plaintiff is referring to when he states "*that* condition and federal policy" because he references a number of policies and actions throughout the amended complaint.

plaintiff's claim for declaratory and mandamus relief seem to be premised upon the violations set forth in Counts 1–12.[11]

Plaintiff's claim for declaratory and injunctive relief with respect to the alleged DEA policy also fails because he has failed to plead that he is likely to be harmed in the future. Defs.' Mem. at 11–12. A party seeking declaratory or injunctive relief must demonstrate that he is "realistically threatened by a repetition of his experience." *Haase v. Sessions*, 835 F.2d 902, 910–11 (D.C. Cir. 1987), quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). The existence of a policy is not enough to allege a threat of repetition – plaintiff must also show that he is "likely to be subjected to that policy again." *Id.* at 11. Plaintiff's complaint fails to state that he will be subject

---

11  Beyond what is stated in Count 13, plaintiff makes demands for mandamus and declaratory relief multiple other times throughout the amended complaint. In particular, plaintiff states:

- "Worthington seeks a federal, state writ of mandamus . . . requiring [compliance] with either RCW 69.50.505 or 18 U.S.C. § 983 and 28 CFR 9.3. Am. Compl. ¶ 1.4.

- Plaintiff "seeks a writ of mandamus . . . that the policies to use federally cross designated state and local law enforcement to seize medical marijuana, . . . are unconstitutional . . . ." Am. Compl. ¶ 1.6.

- "[T]he state, the DEA or federally controlled state and local component should be compelled by state or federal writ of mandamus . . . to admit or deny it made a seizure of Worthington's property and violated 18 U.S.C. § 983 and 28 CFR 9.3." Am. Compl. ¶ 1.19.

- "[It] is now necessary for a writ of mandamus to order compliance with either the federal or state seizure forfeiture laws." Am. Compl. ¶ 1.21.

- "It is now up to the court to grant a writ of mandamus to order the TNET, WestNET and the DEA components to comply with the state or federal statutes . . . ." Am. Compl. ¶ 1.22.

- "Plaintiff seeks an injunction and writ of mandamus under 28 U.S.C. §§ 1361, RCW 7.16, RCW 34.05 and 5 U.S.C. § 702(2), enjoining the defendants from using WestNET under the command and control of O.N.D.C.P., U.S.D.O.J. to collect monies and seize properties." Am. Compl. ¶ 1.29.

to some future inquiry arising out of the seizure of his plants or the status of the task force; plaintiff only makes conclusory assertions that he "will suffer immediate damage and harm" if WestNET is allowed to operate. *See, e.g.*, Am. Compl. ¶ 5.28. These allegations are insufficient to show that plaintiff is entitled to declaratory or injunctive relief.

Furthermore, plaintiff confuses the remedy of mandamus with declaratory and injunctive relief. Plaintiff requests writs of mandamus to require defendants to comply with the law, declare that defendants' violations were unlawful, that their seizure of plaintiff's property was unlawful, and to declare that the use of WestNET is unlawful. But a district court has jurisdiction to issue a writ of mandamus only to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Thus, mandamus relief is only permissible when a plaintiff demonstrates "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016), citing *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction. *See In re Medicare Reimbursement Litigation,* 414 F.3d 7, 10 (D.C. Cir. 2005). "The party seeking mandamus has the burden of showing 'that its right to issuance of the writ is clear and indisputable.'" *N. States Power Co. v. U.S. Dep't of Energy,* 128 F.3d 754, 758 (D.C. Cir. 1997), quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988); *Power v. Barnhart*, 292 F.3d 781, 786 (D.C. Cir. 2002).

Because counts 1–12 have been dismissed on various grounds, plaintiff's right to relief is not clear and indisputable. *Citizens for Responsibility and Ethics in Wash. v. Trump*, 924 F.3d 602, 609 (D.C. Cir. 2019) (finding that because the Court was precluded from reviewing plaintiff's

claim, CREW had no "clear and indisputable right to [mandamus relief]") (alteration in original). Because plaintiff is not entitled to declaratory, injunctive, or mandamus relief, Count 13 will be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. Given the dismissal of plaintiff's claims, his first and second motions to take judicial notice are denied as moot.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 30, 2020